UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WENDY LYNNE MCCANE,

    Plaintiff,

v.                                                       Case No: 8:18-cv-1559-T-36AAS

SCHOOL DISTRICT OF PASCO
COUNTY,

    Defendant.
_____/

## **O R D E R**

This matter comes before the Court upon the United States' Motion to Dismiss Second Amended Complaint (Doc. 28), to which Plaintiff has not responded; Defendants' Motion to Dismiss Amended Complaint with Prejudice (Doc. 29), to which Plaintiff has not responded; the United States' Motion to Strike Plaintiff's Third Amended Complaint (Doc. 31); Defendants' Opposed Motion to Strike the Plaintiff's Third Amended Complaint and Dismiss the Action with Prejudice, or, in the Alternative, Deny Leave to Amend to File the Proposed Filing (Doc. 32); Defendant's Opposed Motion to Strike the Plaintiff's Fourth Amended Complaint and Dismiss this Action with Prejudice, or, in the Alternative, Deny Leave to Amend to File the Proposed Pleading (Doc. 35); and Plaintiff's response to the Motions to Strike (Doc. 36). In the Motions to Dismiss, the United States and Defendants argue that Plaintiff failed to state a claim and the Second Amended Complaint should be dismissed with prejudice. Docs. 28-29. With respect to the Motions to Strike, they request that the Court strike Plaintiff's Complaints that were filed without first obtaining leave of the Court or consent of the parties. Docs. 31-32; Doc. 35. The Court, having considered the motion and being fully advised in the premises, will grant the Motions to Dismiss and Motions to Strike.

## I. BACKGROUND

### A. Procedural History

Plaintiff, Wendy McCane originally filed this action alleging a violation of the False Claims Act. Doc. 1. Because this Court does not have subject matter jurisdiction over claims brought by *pro se* parties under the False Claims Act, the Court directed Plaintiff to address this Court's subject matter jurisdiction or retain counsel. Doc. 7. Plaintiff filed an Amended Complaint, which the Court dismissed without prejudice on motion of the United States. Doc. 20; Doc. 26. Plaintiff filed a Second Amended Complaint that the United States and other Defendants have moved to dismiss. Docs. 27-29.

Five days after the Motions to Dismiss were filed, Plaintiff filed a Third Amended Complaint without first obtaining leave of the Court. Doc. 30. Both the United States and the remaining Defendants moved to strike the Third Amended Complaint, following which Plaintiff filed a Fourth Amended Complaint, again without first seeking or obtaining leave of the Court. Docs. 31-32; Doc. 34.

### B. Facts[1]

Plaintiff alleges that she was unlawfully retaliated against in her employment as the Title I Program Evaluator with the Pasco County School District ("PCSD") after reporting Title I Part A Grant Violations. Doc. 27 at 1. Plaintiff alleges that those who unlawfully retaliated against her include the following Defendants: PCSD; Sandra May, the PCSD Employee Relations Equity Manager; Tammy Rabon, the PCSD Supervisor of Federal Programs; Brian Shultz, the PCSD Title

---

[1] The following statement of facts is derived from the Second Amended Complaint (Doc. 27), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

I Supervisor; Anthony Harroun, the PCSD Senior Grant Writer; Stephanie Sheridan, the PCSD Curriculum Specialist; Jeremy Billington, a federal agent with the Office of the Inspector General; Michael Stowell, the Florida Director of Education Title I Director; Lisa Roderick, the Florida Department of Education Title I Specialist; Christopher Hessberger, a Department of Education Office of Inspector General Special Agent; Pamela Thornton, an investigator for the Florida Commission on Human Relations; and Michael Farrell, the Director of the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 1-2.

Plaintiff was hired by the PCSD as the Title I Program Evaluator in August 2016. *Id.* at 2. During her employment, Plaintiff was asked to evaluate various programs, and after doing so, expressed concern that Title I funds were not being used in compliance with Title I. *Id.* at 2-5. Plaintiff expressed her concerns to Defendants Shultz, Rabon, and her supervisor. *Id.* at 3. After raising these concerns, Plaintiff was denied access to further data. *Id.* at 3-4.

When Plaintiff ultimately was granted access to further data, she expressed more concerns to Rabon and Schultz about expenditures that she believed were inconsistent with the Title I Part A grant. *Id.* at 60. She was advised, as she previously had been, to "leave it alone[.]" *Id.*

Becoming more concerned, Plaintiff requested a meeting with Rabon, Schultz, and Rayann Mitchell, the Director of Teaching and Learning. *Id.* After Plaintiff did so, Rabon threatened Plaintiff and was mad that Plaintiff requested a meeting with Mitchell. *Id.* Plaintiff then expressed concerns about Rabon and Schultz to Defendant Harroun, and Harroun's response was to ask Plaintiff whether "she could be bought[.]" *Id.* Plaintiff responded in the negative. *Id.* After receiving this response, Harroun told Plaintiff that "she could bring this whole thing down," and implied that Schultz and Rabon had been siphoning money from the grant to afford multiple vacations. *Id.* at 6-7.

The following month, Plaintiff contacted and met with Defendant Stowell to express her concerns about the use of grant money. *Id.* at 7. While in Orlando for the meeting, Plaintiff shared a room with Defendant Sheridan, who Plaintiff saw plugging her charger into Plaintiff's computer and phone without explanation. *Id.* at 8.

The following day, Plaintiff submitted a complaint to the Florida Department of Education regarding PCSD's fund violations. *Id.* at 9. Approximately one week later, Rabon asked Plaintiff and Schultz to meet so that Plaintiff could express her concerns, which she did. *Id.* Rabon yelled at Plaintiff and asked Shultz to leave. *Id.* Because Plaintiff was uncomfortable being alone with Rabon, she went in search of another person and found Defendant May. *Id.* at 10. Plaintiff advised May of her concerns and stated that she had filed a complaint with the Florida Department of Education. *Id.*

The following day, Harroun was the only person present in the office and was boxing up all of the Title I documents. *Id.* Harroun advised Plaintiff that she was not supposed to be there. Plaintiff searched out May, who told Plaintiff to go home. *Id.* May also requested Plaintiff bring the Florida Department of Education complaint documents to her the following week to allow the PCSD to conduct an investigation. *Id.* Plaintiff did so, and after she did, May requested Plaintiff turn in her computer, keys, and badge and advised Plaintiff that she was being placed on administrative leave. *Id.*

Plaintiff contacted an attorney and met with him. *Id.* at 11. The following day, Plaintiff's computer was hacked and documents were removed. *Id.* A screen shot was also erased from her phone. *Id.*

Approximately one week later, Plaintiff's attorney advised Plaintiff to return a wireless internet device and iPad to the PCSD and stated that the PCSD wished to meet with her. *Id.* at 12.

When she next met with her attorney, various suspicious events occurred that made her question whether he was who he said he was. *Id.* at 12-13. Later that month, he told Plaintiff that PCSD found Plaintiff's allegations to be unfounded. *Id.* at 13. Additionally, Plaintiff's employment was terminated due to budget cuts. *Id.*

Approximately one month later, Plaintiff's attorney stated that he would no longer work on her case and that the United States Attorney had decided not to pursue her case. *Id.* at 14.

Plaintiff then filed a whistleblower complaint with the Florida Attorney General's Office, which referred the case to the Florida Department of Education Office of Inspector General. *Id.* Defendant Billington worked on the case, asked her to provide evidence, and sent her a link to the Florida Commission on Human Relations ("FCHR") so that she could file a complaint. *Id.* Billington advised Plaintiff that he gave the documents to Defendant Stowell for investigation. *Id.*

Ultimately, the Florida Department of Education concluded its investigation without addressing any violations. *Id.* at 16. The FCHR found that no retaliation or discrimination occurred. *Id.*

Based on these allegations, Plaintiff alleges that Defendants retaliated against her in violation of the National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712(a). *Id.* at 18-20. Plaintiff claims that Defendants retaliated against her for reporting federal violations by placing her on administrative leave and, ultimately, terminating her employment. *Id.* at 18. However, Plaintiff does not identify any claim other than violation of the NDAA.

Defendants PCSD, May, Rabon, Schultz, Harroun, and Sheridan ("Defendants") move to dismiss the Second Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 8, 10, and 12. Doc. 29. Additionally, the United States moves to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 28.

## II. LEGAL STANDARD

### A. 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction; Rule 12(b)(1) permits a facial or factual attack. *McElmurray v. Consol. Gov't of Augusta–Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). A Rule 12(b)(1) factual attack, however, "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation and internal quotation marks omitted). When the attack is factual, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Therefore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

### B. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

In reviewing a *pro se* complaint, the Court holds the pleading to a less stringent standard and construes the complaint more liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). Although courts afford liberal construction of *pro se* litigants' pleadings, litigants appearing *pro se* must adhere to the procedural requirements of the Federal Rules of Civil Procedure as well as the Local Rules for the Middle District of Florida. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("And although we are to give liberal construction to the pleadings of *pro se* litigants, we nevertheless have required them to conform to procedural rules.") (Citation and internal quotation marks omitted).

## III. DISCUSSION

### A. United States

"Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." *Thompson v. McHugh*, 388 F. App'x 780, 873 (11th Cir. 2010) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)). Here, Plaintiff has not pointed to any provision in which the United States waived sovereign immunity for a claim under the NDAA.

7

Accordingly, the Court lacks subject matter jurisdiction over any such claim against the United States.[2] Because Plaintiff cannot state an NDAA claim against the United States, this claim is dismissed with prejudice. *Cf. Williams v. Morgan State Univ.*, No. GLR-19-5, 2019 WL 4752778, at *6 (D. Md. Sept. 30, 2019) (stating that "the NDAA does not mention sovereign immunity or provide that the states shall not be immune from suit" and dismissing a claim against a state university on the basis of the Eleventh Amendment).

### B. Defendants

Defendants move to dismiss the Second Amended Complaint because (1) it is a shotgun pleading that lumps numerous unrelated facts into paragraphs together and fails to separate facts and claims against individual defendants; (2) Plaintiff fails to state a claim under the NDAA against Defendants because the Act does not provide for liability against people in their individual capacities; and (3) Plaintiff fails to state a claim under the NDAA because Plaintiff does not plead facts showing specific Defendants took retaliatory action against her based on a protected NDAA disclosure.

#### 1. Shotgun Pleading

The Court previously advised Plaintiff that her Amended Complaint constituted a shotgun pleading because it did not identify what claim was brought against what Defendant or what paragraphs applied to what claim. Doc. 26 at 6. Nonetheless, the Second Amended Complaint is in a similar form, fails to allege individual counts against specific Defendants, and fails to identify which factual allegations would support her claims against the various Defendants. Doc. 27. Additionally, Plaintiff identifies county, state, and federal employees as defendants in the caption

---

[2] Although the United States presents other arguments for dismissal of the Second Amended Complaint, because this issue is dispositive, the Court will not address the remaining arguments.

of the case, but does not seek any relief against them. For this reason alone, the Court will dismiss the Second Amended Complaint. *Toth v. Antonacci*, No. 19-10564, 2019 WL 4926961, at *2 (11th Cir. Oct. 7, 2019) (affirming a dismissal with prejudice of a shotgun amended complaint where the plaintiff "was on notice that his pleadings were infirm" and failed to correct the defects of the original complaint so as to bring the pleading into compliance with Federal Rules of Civil Procedure 8 and 10).

### 2. Failure to State a Claim

Plaintiff's Second Amended Complaint also fails to state a claim against Defendants. Plaintiff's claim is brought pursuant to 41 U.S.C. § 4712, which states that

> An employee of a . . . grantee . . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract . . . or grant.

The persons and bodies covered by paragraph 2 include (1) members of Congress or representatives of a committee of Congress, (2) an inspector general, (3) the Government Accountability Office, (4) a federal employee responsible for contract or grant oversight or management at the relevant agency; (5) an authorized official of the Department of Justice or other law enforcement agency, (6) a court or grand jury, and (7) a management official or other employee of the grantee. *Id.* § 4712(a)(2)(A)-(G).

The following elements are required for the NDAA to provide an employee protection: (1) the employee must "reasonably believe he was disclosing evidence" described by the statute, (2) the allegedly protected disclosure must have been made to a covered person or body, and (3) "the protected disclosure was a 'contributing factor' to an adverse personnel action.' " *Pritchard v.*

9

*Metro. Wash. Airports Auth.*, No. 1:18-cv-1432 (AJT/TCB), 2019 WL 5698660, at *12 (E.D. Va. Nov. 4, 2019), *appeal filed*, No. 19-2386 (4th Cir. Dec. 5, 2019); *see also Omwenga v. United Nations Found.*, No. 15-cv-786 (TSC), 2019 WL 4860818, at *12 (D.D.C. Sept. 30, 2019) ("To establish retaliation under § 4712, a plaintiff must show that (1) she was an employee of a government contractor, (2) she disclosed information she reasonably believed was evidence of a rule violation related to a federal contract to the required person, and (3) her disclosure was a contributing factor in the action taken against her.") (internal quotation omitted). "Even if the employee meets that burden, the employer need not take any corrective action if it presents 'clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure.' " *Pritchard*, 2019 WL 5698660, at *12 (citing 5 U.S.C. § 1221(e)(2)).

Plaintiff's Second Amended Complaint does not plead a prima facie case for discrimination based on a protected NDAA disclosure. As with the Amended Complaint, Plaintiff does not plead facts showing that the individuals to whom she expressed concern were persons or bodies covered by the NDAA. Although Plaintiff alleges that May was "responsible for the investigation of violations provided by" Plaintiff, there are insufficient facts to support this allegation. Plaintiff alleges that May was the PCSD Employee Relations Equity Manager, but does not describe her role. Doc. 27 at 1-2. Even if Plaintiff overcame this hurdle, the Second Amended Complaint does not sufficiently allege that the disclosures to May were of the type protected by the NDAA. It is not clear from the Second Amended Complaint that Plaintiff did more than state concerns that PCSD was not in compliance with the requirements of Title I. Plaintiff does not address a rule or law that she believed was being violated, or allege that this was communicated to May. This is simply not sufficient to meet the pleading standard or state a claim. Accordingly, Plaintiff's NDAA claim will be dismissed.

Moreover, the Court will dismiss this claim with prejudice because any amendment would be futile. *Lucas v. USAA Cas. Ins. Co.*, 716 F. App'x 866, 870 (11th Cir. 2017) (recognizing that leave to amend need not be granted where amendment would be futile). Plaintiff has already filed two prior complaints, including the Second Amended Complaint, which was filed with the benefit of guidance from the Court as to the deficiencies of the Amended Complaint. Doc. 1; Doc. 8; Doc. 26; Doc. 27. Even if Plaintiff could cure the factual deficiencies, she has not shown that an NDAA action could be filed against the individual Defendants in their individual capacities. As the United States Court of Appeals for the Seventh Circuit recognized, the NDAA "prohibits reprisals by an *employer* . . . ." *Delebreau v. Danforth*, 743 F. App'x 43, 44 (7th Cir. 2018). However, Plaintiff sued the individual Defendants in their personal capacities without any theory as to how they could be personally liable under the NDAA.

With respect to the PCSD as a Defendant, Plaintiff likewise has not addressed how it could be liable. As has been explained in Defendants' filings, PCSD is not a legal entity that has employed Plaintiff. Instead, Florida law provides that "[t]he governing body of each school district shall be a district school board." § 1001.40, Fla. Stat. Nor do the factual allegations of the Second Amended Complaint describe retaliatory action by the PCSD based on an NDAA protected disclosure. Despite this flaw being pointed out, Plaintiff has made no effort to correct the deficiency as to who she named as a Defendant in her subsequently-filed (although unauthorized, as described below) Complaints. Accordingly, any further amendment would be futile. *Lucas*, 716 F. App'x at 870 (affirming dismissal of second, third, and fourth amended complaints where the pleadings did not resolve previously-identified deficiencies and further amendment would be futile).

### C. Motions to Strike Unauthorized Amended Complaints

Plaintiff filed a Third Amended Complaint and Fourth Amended Complaint without first seeking or obtaining leave of the Court. Doc. 30; Doc. 34. The United States and Defendants moved to strike the Third Amended Complaint, and Defendants moved to strike the Fourth Amended Complaint. Doc. 31; Doc. 35. Plaintiff has not addressed her failure to first seek leave of the Court, or requested that leave be granted *nunc pro tunc*, or requested leave to file a Fifth Amended Complaint. Instead, Plaintiff filed a response that restates allegations complained in her various Complaints. Doc. 36.

Except in certain circumstances not applicable here, Federal Rule of Civil Procedure 15(a) requires leave of the Court or written consent of the opposing parties to amend a complaint. Federal Rule of Civil Procedure 12(f) allows the Court to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This Court has previously stricken complaints filed without first obtaining leave of the Court or consent of the parties pursuant to Rule 12(f). *See*, *e.g.*, *Jablonski v. Travelers Cos., Inc.*, No. 2:15-cv-365-38CM, 2016 WL 8943937, at *1 (M.D. Fla. June 9, 2016). The Court will do so again here. Because Plaintiff's Third and Fourth Amended Complaints are redundant and impertinent, they are hereby stricken. Accordingly, it is

**ORDERED**:

1. The United States' Motion to Dismiss Second Amended Complaint (Doc. 28) is **GRANTED.**

2. Defendants' Motion to Dismiss Amended Complaint with Prejudice (Doc. 29) is **GRANTED**.

3. The United States' Motion to Strike Plaintiff's Third Amended Complaint (Doc. 31) AND Defendants' Opposed Motion to Strike the Plaintiff's Third Amended Complaint and Dismiss the Action with Prejudice, or, in the Alternative, Deny Leave to Amend to File the Proposed Pleading (Doc. 32) are **GRANTED.** The Third Amended Complaint (Doc. 30) is **STRICKEN.**

4. Defendant's Opposed Motion to Strike the Plaintiff's Fourth Amended Complaint and Dismiss the Action with Prejudice, or, in the Alternative, Deny Leave to Amend to File the Proposed Filing (Doc. 35) is **GRANTED.** The Fourth Amended Complaint (Doc. 34) is **STRICKEN**.

5. This action is **DISMISSED** with prejudice.

6. The Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Tampa, Florida on January 30, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any